UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TERRY D. LEDBETTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:13-cv-01173-SEB-TAB |
| CAROLYN COLVIN Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND**

**I. Introduction**

Plaintiff Terry Ledbetter appeals the Administrative Law Judge's decision denying his application for a period of disability, disability insurance benefits, and supplemental income. His alleged impairments include discogenic and degenerative disorders of the lumbar and cervical spine. Ledbetter argues that the ALJ failed to explain why she discredited the treating physician's opinion, which led to a faulty RFC determination, and that the ALJ's credibility determination is erroneous. For the reasons set forth below, Plaintiff's motion for summary judgment or remand [Filing No. 19] should be denied and the Commissioner's decision should be affirmed.

**II. Discussion**

*A. Standard of Review*

The Social Security regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled: whether the plaintiff (1) is currently unemployed, (2) has a severe impairment, (3) has an impairment that meets or equals one of the impairments listed as

1

disabling in the Commissioner's regulations, (4) is unable to perform her past relevant work, and (5) is unable to perform any other work in the national economy. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512–13 (7th Cir. 2009). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id*.

The Court must uphold the ALJ's decision if substantial evidence supports her findings. *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The ALJ, however, need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion. *Pepper*, 712 F.3d at 362.

B. *Treating physician*

Ledbetter argues that the ALJ's decision failed to weigh his treating physician's opinion pursuant to Social Security Ruling 96-2p. He further claims that the ALJ failed to minimally articulate her reasons for rejecting his treating physician's opinion. The Commissioner contends

that Ledbetter's treating physician's opinion was not well-supported by medical evidence so the ALJ was not required to give it controlling weight.

The ALJ gave very little weight to treating physician Dr. Charlie Purdy's medical reports, finding the opinion to be "based on the claimant's subjective statements given the absence of medical documentation to support such significant restrictions." [Filing No. 17-2, at ECF p. 20.] Dr. Purdy found Ledbetter had pain severe enough to interfere with concentration and attention, had a severe limitation to deal with work stress, was unable to sit for more than fifteen minutes at a time, for up to an hour a day, and could stand or walk about fifteen minutes at a time for one hour total per day. Dr. Purdy also indicated that Ledbetter needed to lie down between sitting and standing or walking for an hour and needed to rest in addition to normal breaks for pain relief. He opined that Ledbetter could occasionally lift five pounds, was able to balance on level terrain occasionally, but was unable to flex his neck, reach in any direction or handle items with either hand. [Filing No. 17-2, at ECF p. 19-20.]

State agency consultants Dr. Mohammed Saquib and Fernando Montoya, M.D. found that Ledbetter did not have limitations as extreme as Dr. Purdy suggested. Instead, Drs. Saquib and Montoya found Ledbetter was able to grasp, lift, carry, and manipulate objects in both hands and perform repetitive movements with both feet. Dr. Saquib found that Ledbetter was unable to bend over, could only squat halfway, but was able to sit and stand normally. [Filing No. 17-7, at ECF p. 84-86.] In reviewing Ledbetter's medical record, Montoya found that Ledbetter was able to lift, carry, push, and pull ten pounds frequently and twenty pounds occasionally. He could sit, stand, or walk about six hours in an eight-hour day and could occasionally climb ladders, ropes, scaffolds, ramps, and stairs, and occasionally balance, kneel, stoop, crouch, and crawl. [Filing

17-7, at ECF p. 91-97.] Agency medical consultant Richard Wenzler, M.D. affirmed Montoya's findings.

The ALJ gave significant weight to the consultative examiners' opinions, but further limited Ledbetter's capabilities finding that he cannot climb ladders, ropes, or scaffolds, and must avoid hazards as he uses Norco, a narcotic pain reliever. [Filing No. 17-2, at ECF p. 20.] Ultimately, the ALJ found Ledbetter had the residual functional capacity to perform light work so long as he is not required to climb ladders, ropes, or scaffolds, and only occasionally must climb ramps and stairs. The ALJ also limited Ledbetter so that he could only occasionally stoop, kneel, crouch, and crawl, and restricted his exposure to hazards like unprotected weights and dangerous heavy machinery.

Ledbetter asserts that the ALJ failed to provide a sound reason for discounting Dr. Purdy's opinion when objective medical evidence in the record supports the doctor's limitations. Specifically, Ledbetter argues that the ALJ failed to discuss several factors set forth under 20 C.F.R. § 404.1527(d). The ALJ discounted Dr. Purdy's opinion, giving it very little weight because there was no medical documentation to support his restrictions. However, the ALJ's analysis of Dr. Purdy's opinion ends there. She failed to discuss the remaining factors set forth under 20 C.F.R. § 404.1527(d)—including the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, consistency with the record, specialization of the physician, and other factors of relevance—to determine the appropriate weight to give Ledbetter's treating source's opinion.

The Commissioner asserts that the ALJ provided sufficient reasoning for her decision to discredit Dr. Purdy as "the form completed by Dr. Purdy simply placed checkmarks beside preprinted answers, without explanation or analysis," whereas Dr. Montoya explained the

4

evidence he considered in reaching his opinion. [Filing No. 26, at ECF p. 7.] While this may be a reasonable explanation of why the ALJ discounted Dr. Purdy's opinion, this is not the reason articulated by the ALJ, and is merely advanced by the Commissioner on appeal. *See Jelinek v. Astrue,* 662 F.3d 805, 812 (7th Cir. 2011) ("We have made clear that what matters are the reasons articulated *by the ALJ*."). The ALJ must at least minimally articulate her reasons for discounting the treating physician's opinion after considering the regulatory factors. *See Elder v. Astrue,* 529 F.3d 408, 415 (7th Cir. 2008). Here, however, the ALJ's decision to give very little weight to Dr. Purdy fails to mention evidence in support of this conclusion.

Nevertheless, the ALJ's error was harmless. If remanded, the Magistrate Judge is convinced that the ALJ would still discredit Dr. Purdy's opinion and rely primarily on the consultative examiners to arrive at the RFC. *See McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011) ("[W]e will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result."). A review of Dr. Purdy's medical reports reveals that Dr. Purdy observed little to no distress in Ledbetter due to pain despite Ledbetter's reported statements of low back pain. Dr. Purdy's own medical recommendations focus on pain management, exercise, and a neurosurgeon consultation. [Filing No. 17-7, at ECF p. 41-71.] Tellingly, on December 1, 2010—the date on which Dr. Purdy provided his medical source statement—Dr. Purdy's records denote Ledbetter's low back pain history but fail to set forth any evidence to suggest Ledbetter is unable to work or that a severe restriction is appropriate. Dr. Purdy's December 1, 2010, record merely indicates that:

> Patient feels he is not able to work. He has much pain when he sits for any length of time. Has to get up at intervals to walk to relieve the pain. Patient has had multiple epidural injections by Dr. Howe. . . . Follow up with Dr. Howe, continue to work on getting some exercise with walking.

[Filing No. 17-7, at ECF p. 42.] Dr. Purdy's medical evidence is insufficient to support his opinion that Ledbetter is severely limited. Though the ALJ erred in failing to discuss the regulatory factors, such error should be considered harmless as Dr. Purdy's medical records do not support his opinion that Ledbetter has severely limited capabilities.

### C. Credibility determination

Ledbetter also argues that the ALJ's credibility determination is patently wrong. According to Ledbetter, the ALJ erroneously relied on her observations at the hearing, when the hearing was too brief to make any substantial conclusions as to Ledbetter's pain. Moreover, the ALJ erred in finding that Ledbetter's statements were inconsistent with his daily activities.

An ALJ's credibility determination is entitled to special deference and is overturned only if it is patently wrong. *See Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Porchaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). The court will only reverse if the ALJ "grounds his credibility finding in an observation or argument that is unreasonable or unsupported." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006).

In making her credibility determination, the ALJ considered a variety of factors. For one, the ALJ found Ledbetter's pain symptoms inconsistent as Ledbetter claimed he could not sit for more than ten minutes, but Ledbetter sat through the entire thirty-five minute hearing without any overt pain behavior. [Filing No. 17-2, at ECF p. 18.] The ALJ also found Ledbetter's alleged degree of limitation to be unsupported by the record as he was able to ambulate without the use of a cane, received routine and conservative care, and was not fired from his last job as a result of his impairments but due to a lay off. [Filing No. 17-2, at ECF p. 19.] Moreover,

Ledbetter's records report that he was capable of doing laundry, meal preparation, and shopping despite the fact that he testified that his mother was actually the one who performed these household chores because he "cannot do much." [Filing No. 17-2, at ECF p. 19.] The ALJ opined, "there is no record of any significant deterioration in the claimant's condition to result in such a change, or to support the claimant's testimony that he has to spend most of his day lying flat on his back." [Filing No. 17-2, at ECF p. 19.]

Ledbetter argues that the ALJ erred in relying on her observations during the hearing to find that Ledbetter's pain symptoms were not as severe as he alleged. But the ALJ reasonably discounted Ledbetter's pain symptoms as she observed no overt pain symptoms during the thirty-five minute hearing, which contradicted Dr. Purdy's assessment that Ledbetter could sit for only ten minutes. While Ledbetter takes issue with the ALJ's characterization of his pain symptoms, "an ALJ may disregard a claimant's assertions of pain if he validly finds them not credible." *Getch v. Astrue,* 539 F.3d 473, 483 (7th Cir. 2008). An ALJ "may not ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence," but "discrepancies between objective evidence and self-reports may suggest symptom exaggeration." *Id.*

Ledbetter claims that being able to sit through a thirty-five minute hearing is not a significant departure from his purported ten-minute sitting capacity so as to discredit his reported pain symptoms. [Filing No. 20, at ECF p. 15.] The ALJ found that there was no evidence in the record to support Ledbetter's subjective pain symptoms, and a review of Dr. Purdy's medical reports indicate little change in Ledbetter's symptoms or behavior. Additionally, consultative examiners found Ledbetter capable of light work even though he suffered from low back pain. [*See* Filing No. 17-7, at ECF p. 42-50; Filing No. 17-7, at ECF p. 84-86, 90-97.] Thus, the ALJ

7

reasonably discounted Ledbetter's subjective pain symptoms. It was not patently wrong for the ALJ to conclude that, although Ledbetter did suffer from chronic low back pain, medical evidence did not support the degree of limitation he alleged.

Moreover, Ledbetter asserts that his daily activities are not inconsistent with the evidence as the ALJ concluded. Ledbetter notes that the ALJ referred to his 2010 statements to determine his daily capabilities, even though he suffers from a degenerative condition that caused him to move in with his mother. As Ledbetter explains, "The ALJ overlooks that Plaintiff's condition is degenerative and it was likely he had more limitations in 2012 than in 2010 when he filled out the ADL." [Filing No. 20, at ECF p. 16.] The ALJ indicated that Ledbetter previously reported having a greater ability to care for himself but more recently testified that his mother was taking care of him. However, the ALJ discredited Ledbetter's testimony as "there is no record of any significant deterioration in the claimant's condition to result in such a change." [Filing No. 17-2, at ECF p. 19.] Indeed, pain consultant Dr. Howe reported little change to Ledbetter's daily functioning and social activities on account of pain. [Filing No. 17-7, at ECF p. 51, 56, 65, 69.]

Ledbetter also argues that his treatment was not entirely routine and conservative because the medical records show that he took narcotic pain relievers, attended physical therapy, received steroid injections, and was encouraged to undergo surgery. [Filing No. 20, at ECF p. 17.] But Ledbetter indicated at the hearing that Dr. Howe noted several times that Ledbetter should consider surgery. However, his treating physician Dr. Purdy, who consulted with Dr. Howe, referred him to a neurosurgeon but made no recommendations on surgery. Rather, Dr. Purdy encouraged exercise for pain relief. [Filing No. 17-7, at ECF p. 32, 35, 51, 57.] Thus, it was not unreasonable for the ALJ to determine that Ledbetter's treatment was conservative and routine.

8

Moreover, the ALJ did not base her credibility determination solely on Ledbetter's treatment regimen. She also considered his behavior at the hearing, his daily activities, his ability to walk, and the circumstances surrounding his lay off. Ledbetter contests the ALJ's reliance on his ability to walk without a cane, but it was not unreasonable for the ALJ to consider Ledbetter's walking ability as part of her credibility analysis. The Court should defer to the ALJ's credibility finding and should not remand the case for further consideration.

## III. Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the Plaintiff's motion for summary judgment or remand be denied [Filing No. 19], and the Commissioner's decision be affirmed. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

06/13/2014

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Frederick J. Daley, Jr.
DALEY DISABILITY LAW P.C.
fdaley@fdaleylaw.com

Meredith E. Marcus
DALEY DISABILITY LAW, PC
mmarcus@fdaleylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov