UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| TERRY D. LEDBETTER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:13-cv-01173-SEB-TAB |
| | ) | |
| CAROLYN COLVIN, Acting Commissioner of the Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

This is an action for judicial review of the final decision of Defendant Carolyn Colvin, the Commissioner of the Social Security Administration ("Commissioner"), finding Plaintiff Terry D. Ledbetter not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423(d), 1381a, & 1382(a). This case was referred for consideration to Magistrate Judge Baker, who on June 13, 2014 issued a Report and Recommendation that the Commissioner's decision be upheld because an error made by the ALJ was harmless and the decision was otherwise supported by substantial evidence and in accordance with law. This cause is now before the Court on Plaintiff's objections to the Magistrate Judge's Report and Recommendation. For the reasons set forth below, we SUSTAIN Plaintiff's objections to the Report and Recommendation, and we REVERSE the decision of the Commissioner and REMAND the matter for further proceedings.

### Factual and Procedural Background

#### Facts

1

Plaintiff Terry D. Ledbetter is a 53-year-old resident of Anderson, Indiana. A high-school graduate, Ledbetter has in the past worked as an electrician. He claims a disability onset date of November 1, 2008. R. 129–143.[1]

Ledbetter has a history of back problems, with pain radiating from the back to his left hip and leg. He has presented records of treatment with pain specialist Dr. Charles Howe starting in 2009. Dr. Howe performed lumbar epidural injections to control pain in June 2009, August 2009, and September 2009, and a "mutifidus myofascial trigger-point" steroid injection on October 13, 2009. *See* R. 217, 220–221, 226–230, 245. Ledbetter underwent an MRI on July 8, 2009 that showed "lumbar degenerative disc disease" in his L4-L5 vertebrae with "mild central stenosis" and "mild facet degeneration." R. 225. Dr. Howe noted that Ledbetter reported his pain as ranging from 5/10 on a 10 point scale at best, to 10/10 at worst; he further noted in July 2009 that Ledbetter complained of "aching throbbing, stabbing [pain] shooting down his left leg in a global manner. Walking, sitting, and standing can be very difficult. Only lying supine offers him relief." R. 222. As Dr. Howe noted in his records, Ledbetter had been recommended for back surgery by a previous physician, Dr. Tekula, but he declined the surgery because it was not covered under his health insurance. R. 273. Dr. Howe prescribed Norco and Motrin to combat the pain. *Id.* Ledbetter also underwent physical therapy at the Erskine Rehabilitation Center in 2009, but his discharge notes indicated that, as of October 2009, most of the therapeutic goals were not met and he continued to have difficulty sleeping, "extremity/trunk weakness," and difficulties with joint mobility and range of motion. R. 241.

Ledbetter's primary care physician is Dr. Charles Purdy, who stated in July 2011 that he had treated Ledbetter for back pain on nine occasions starting in June 2009, and that Ledbetter's

---
[1] Citations to the Record ("R.") refer to the administrative record transcript filed at Docket No. 17.

back complaints dated back to 2007.[2] R. 328. Dr. Purdy completed a "medical source statement" ("MSS") in December 2010, in which he provided opinions related to Ledbetter's ability to perform work functions. R. 286. Dr. Purdy certified that the following "objective signs" of Ledbetter's back impairment were present: reduced range of motion in the lumbar spine, tenderness, and muscle spasms. *Id.* He stated that Ledbetter was "severely" limited in his ability to "deal with work stress," and that his pain would "constantly" interfere with his attention and concentration levels. R. 287. As for Ledbetter's capacity to perform physical functions, Dr. Purdy stated that he could sit for a maximum of less than 15 minutes before alternating positions and walking about for an hour period, and that he could sit a maximum of one hour cumulatively during an eight-hour workday and stand or walk for a cumulative four hours in an eight-hour workday. R. 288. Finally, he stated that Ledbetter would need at least one hour of "resting/lying down or reclining in a supine position" in an eight-hour workday. R. 289.

Consultative examiner Mohammed Saquib examined Ledbetter on January 22, 2011. Dr. Saquib found that Ledbetter was "able to grasp, lift, carry, [and] manipulate objects in both hands and perform repeated movements with both feet," but was "not able to bend over and . . . can squat [halfway]. [Ledbetter] is able to sit [and] stand normally and he walks with antalgic gait." R. 299. Dr. Saquib also noted during the examination that Ledbetter was able to walk without assistive devices, and was able to get on and off the examination table "with difficulties." R. 298. His examination revealed significantly reduced ranges of motion in Ledbetter's cervical and lumbar spine regions and his hips, and some limitations on range of motion in his shoulders and wrists. R. 300. X-rays conducted in February 2011 revealed cervical

---

[2] According to Dr. Purdy, he had seen Ledbetter for office visits related to lumbar pain on June 23, 2009; July 7, 2009; July 28, 2009; August 31, 2009; September 30, 2009; August 24, 2010; December 1, 2010; May 18, 2011; and July 28, 2011. R. 328.

spondylosis with decreased disc height in the C3-C7 vertebrae, and "severe degenerative disc disease" in Ledbetter's lumbar spine. R. 300–303.

Later in February 2011, state agency reviewing physician Fernando Montoya filled out a residual functional capacity (RFC) report based on a review of Ledbetter's records; Dr. Montoya did not examine Ledbetter. Dr. Montoya found only "slight" limitations of Ledbetter's spine in the lower and upper extremity; he opined that Ledbetter could perform light work with occasional postural restrictions. R. 304–311. In contrast to Dr. Purdy, Dr. Montoya found that that Ledbetter could "stand and/or walk (with normal breaks)" for about six hours in a workday, and could sit (with normal breaks) for six hours in a workday as well. Dr. Montoya summarized his findings by stating that, while Ledbetter had back pain symptoms, "the intensity of the symptoms and their impact on functioning are not consistent with the totality of the evidence. Specifically the [claimant] is fully functional and [without] limitations." R. 309.

At the time of his testimony before the Administrative Law Judge (ALJ) in 2012, Ledbetter reported that his symptoms and pain were largely unchanged from the previous year. R. 36. He testified that he had moved in with his mother so that she could help him with tasks like cooking, laundry and transportation, and he related that he spends six to eight waking hours, on average, lying on his back because that posture provides the greatest pain relief. R, 40. He reported that he could drive a car, though he does so rarely; he also stated that, on occasion, he could walk roughly a city block. R. 43. Finally, he stated that he could sit only with frequent breaks, and that he avoided any lifting because it produced "immediate pain." R. 43–44. His most recent jobs were as an electrician with West Electric (2006) and Wyatt Electric (2007–2008). Ledbetter recounted that he had missed an average of five days a month because of his

back pain at his most recent job, and had been laid off as a result of this chronic absenteeism. R. 33. He has not worked since 2008.

## Procedural History

Plaintiff filed a Title II application for Disability Insurance Benefits (DIB) on November 8, 2010, and a Title XVI application for Supplemental Security Income (SSI) on November 19, 2010. His claims were denied initially on February 23, 2011, and upon reconsideration on April 18, 2011. Plaintiff requested a hearing, which ALJ Rebecca LaRiccia held on January 12, 2012. R. 13.

In a decision issued on February 3, 2012, the ALJ found that Plaintiff was not entitled to DIB or SSI benefits. Applying the five-step analysis employed in determining eligibility for Social Security benefits, the ALJ determined initially that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 1, 2008 (Step One), and that he suffered from "severe" impairments: discogenic and degenerative disorders of the lumbar and cervical spine (Step Two). R. 15–16. At Step Three, however, the ALJ found that these impairments did not meet the criteria for Listing 1.04 (disorders of the spine) or any other listing. R. 16. After ruling out disability according to any listing, the ALJ then determined Plaintiff's residual functional capacity (RFC): "the claimant has the residual functional capacity to perform light work . . . except that he cannot climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs; he can occasionally stoop, kneel, crouch, and crawl. He must avoid exposure to hazards such as unprotected heights and dangerous moving machinery." R. 16 (citations omitted). At Steps Four and Five, the ALJ found that Plaintiff could not perform his past relevant work—but relied on the opinion of a vocational expert to conclude that jobs were available in the national economy which Plaintiff could perform, consistent with his RFC. R. 19–20.

The Appeals Council denied review of the ALJ's decision on April 17, 2013, thus ratifying it as the Commissioner's final decision. Plaintiff filed a timely civil action,[3] and Magistrate Judge Baker issued his Report and Recommendation on June 13, 2014. Docket No. 30.

## Legal Analysis

### Standard of Review

We review the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Rice v. Barnhart,* 384 F.3d 363, 368–369 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). In our review of the ALJ's decision, we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner." *Lopez,* 336 F.3d at 539. However, the ALJ's decision must be based upon consideration of "all the relevant evidence," without ignoring probative factors. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, the ALJ must "build an accurate and logical bridge" from the evidence in the record to his or her final conclusion. *Dixon*, 270 F.3d at 1176. We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue,* 671 F.3d 629, 632 (7th Cir. 2011).

When a party raises specific objections to elements of a magistrate judge's report and recommendation, the district court reviews those elements *de novo,* determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or

---

[3] Plaintiff was granted additional time to file his civil action on May 18, 2013. R. 1–4.

was the result of an error of law. Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify" the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009).

## Discussion

Plaintiff raises two objections to the Magistrate's Report and Recommendation. First, he contends that the Magistrate erred in determining that the ALJ's misapplication of the "treating physician rule" was harmless error. Docket No. 31 at 1–4 (citing Docket No. 30 at 2–6). Second, he challenges the Magistrate's determination that the ALJ did not err in weighing the credibility of the Plaintiff's testimony regarding the limiting effects of his pain and other symptoms. Docket No. 31 at 4–6 (citing Docket No. 30 at 6–9). We conclude that the ALJ's failure to explain his decision to discount the testimony of Plaintiff's treating physician compels reversal and remand of the ALJ's decision. Because our resolution of the first issue raised by Plaintiff compels remand of the case, we do not reach the sufficiency of the ALJ's credibility analysis, which the ALJ must perform anew on remand in light of the entire record before him or her.

I.     **ALJ's treatment of Dr. Purdy's testimony**

In formulating her residual functional capacity (RFC) assessment for Plaintiff, the ALJ stated that she had relied upon a number of sources, including Plaintiff's treatment records, his own testimony as to his pain and symptoms, the opinion of consultative physician Dr. Saquib, and the opinion of Plaintiff's treating physician, Dr. Charles Purdy. R. 17–19. The ALJ elected to discount the testimony of Purdy; she summarized Dr. Purdy's opinions and explained her own reasoning as follows:

7

> [O]n December 1, 2010 Dr. Purdy opined that the claimant's pain is constantly severe enough to interfere with attention and concentration, and that he has a severe limitation to deal with work stress. He also opined that the claimant can sit less than fifteen minutes at a time, for up to an hour a day, and can stand or walk about fifteen minutes at a time, for one hour total per day. He further opined that the claimant needs to lie down between sitting and standing or walking for an hour, and needs to rest in addition to normal breaks for pain relief. He opined that the claimant can lift up to five pounds occasionally. He can balance on level terrain occasionally. He can never flex or rotate his neck, and never reach in any direction, or handle, with either hand. He would miss work more than three times a month. **This opinion is given very little weight; it appears to be based on the claimant's subjective statements given the absence of medical documentation to support such significant restrictions.**

R. 18–19 (emphasis added). This one-sentence explanation was the only one the ALJ gave for his decision not to accord more than "very little" weight to Dr. Purdy's opinions.

"A treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011). If an ALJ discounts the opinion of a treating physician, she must offer "good reasons" for doing so, *Martinez v. Astrue,* 630 F.3d 693, 698 (7th Cir. 2011), and she must perform an analysis to determine what weight the treating physician's opinion *does* merit if not given controlling weight. *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(2)–(6). Federal regulations provide that an ALJ should consider six factors in determining what extra weight, if any, to give such opinions: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) how supportable the doctor's medical opinion is; (4) how consistent the doctor's opinion is with the record; (5) the doctor's specialization; and (6) other factors that might support or contradict the doctor's opinion. 20 C.F.R. § 404.1527(c)(2)–(6); *Yurt v. Colvin,* 758 F.3d 850, 860 (7th Cir. 2014). *But see Elder v. Astrue,* 529 F.3d 408, 415–416 (7th Cir. 2008) (holding that

8

an ALJ's explanation for not according "substantial weight" to a physician's testimony were sufficient where he had at least "minimally articulated" his reasons); *Henke v. Astrue,* 498 F. App'x 636, 640 n.3 (7th Cir. 2012) (noting that an ALJ had done "enough" to explain his decision not to give the opinion of a treating physician added weight by noting the lack of supporting medical evidence and its inconsistency with the rest of the record).

Here, the ALJ declined to give Dr. Purdy's "medical source statement" controlling weight; in fact, she accorded it "very little." R. 19. The only explanation she gave was that Purdy's opinion "appears to be based on the claimant's subjective statements given the absence of medical documentation to support such significant restrictions." *Id.* Plaintiff contends in his brief in support of remand that the ALJ had failed to support his conclusion with an adequate explanation—both because objective medical evidence in the record *did* support Purdy's opinion, and because the ALJ had not engaged in any discussion of the factors enumerated under 20 C.F.R. § 404.1527(c)(2)–(6). Docket No. 20 at 9–13. Magistrate Judge Baker agreed: "The ALJ must at least minimally articulate her reasons for discounting the treating physician's opinion after considering the regulatory factors. Here, however, the ALJ's decision to give very little weight to Dr. Purdy fails to mention evidence in support of this conclusion." R&R at 5.[4]

Despite concluding that the ALJ had erred, the Magistrate determined the error to be harmless. It is this portion of his Report and Recommendation to which Plaintiff now objects, and to which we now turn.

## II. Harmless Error

The Magistrate determined that the ALJ's error in failing to explain his reasoning in discounting Dr. Purdy's opinion was harmless, because "[i]f remanded, the Magistrate Judge is

---

[4] Citations to "R&R" refer to the Magistrate Judge's Report and Recommendation, found at Docket No. 30.

9

convinced that the ALJ would still discredit Dr. Purdy's opinion and rely primarily on the consultative examiners to arrive at the RFC." Docket No. 30 at 5. Remand would produce the same result, the Magistrate reasoned, because Dr. Purdy's medical evidence was insufficient to support his opinion that Plaintiff's functional capacity was severely limited. *Id.* at 5–6.

"Administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." *McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011) (citing *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir. 2010)). However, in determining whether an error is harmless, we are to consider the matter in prospective, rather than retrospective terms; the analysis is not "an exercise in rationalizing the ALJ's decision and substituting our own hypothetical explanations for the ALJ's inadequate articulation." *Id.* We decide that an error is harmless only if we can "say with great confidence what the ALJ would do on remand." *Id.*

Here, we disagree with the Magistrate's conclusion that the error was harmless. Although Dr. Purdy's own records of his examinations of Plaintiff may not contain objective medical evidence corroborating the opinions he expressed in his MSS, Dr. Purdy was also copied on the records of pain specialist Dr. Howe. At the time he provided his opinion, Dr. Purdy was in receipt of an MRI showing degenerative disc disease and stenosis, R. 225, as well as the notes from the multiple epidural or steroid injections with which Dr. Howe had tried to combat Plaintiff's symptoms. *See* R. 217, 220–221, 226–230, 245. He was also copied on Dr. Howe's treatment notes from December 2009, in which he stated that "[w]e think it is about time that he really needs to go back and See Dr. Tekula [Plaintiff's previous doctor] because I don't think he has a choice, he has to have this surgery done." R. 247. Although Plaintiff had not undergone the procedure—according to him, because he could not afford it—Dr. Purdy was aware that two

previous physicians felt that Plaintiff's impairments required surgery.

A reasonable ALJ could thus conclude that Dr. Purdy's opinion was not purely subjective or contradicted by his own medical evidence, *cf. Ketelboeter v. Astrue,* 550 F.3d 620, 625 (7th Cir. 2008) (noting that an ALJ may discount a medical opinion based solely on the patient's subjective complaints); she could also conclude that Dr. Purdy's opinion was not inconsistent with other evidence in the record. X-rays taken in February 2011, after Dr. Purdy issued his opinion, for instance, showed "severe degenerative disc disease," R. 300–303; notes from Plaintiff's treatment at the Erskine Rehabilitation Center in 2009 reflect that Plaintiff was unable to achieve most of his rehabilitative goals and suffered from weakness and range of motion deficits. R. 241. Although the opinions of Dr. Saquib and Dr. Montoya certainly weigh in favor of a less limited RFC assessment than that offered by Dr. Purdy, the picture painted by the record as a whole is not so unambiguous as to render Dr. Purdy's opinion a clear outlier.

Given the state of the record, we cannot say with great confidence that an ALJ on remand would deny Dr. Purdy's opinion controlling weight. *Cf. Scott,* 647 F.3d at 740. Moreover, even if an ALJ were to elect not to grant Purdy's MSS controlling weight, the record does not compel the conclusion that an ALJ who fully engaged in the six-part analysis to determine the proper weight to accord the testimony would reach the same result as did the ALJ here—that is, giving it hardly any weight at all. R. 18–19. As Dr. Purdy himself noted, he had seen Plaintiff in connection with his back pain on nine occasions dating back to June 2009. R. 328. *See* 20 C.F.R. § 404.1527(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories."). Although Dr.

Purdy is not a specialist in spinal disorders, he referred Plaintiff to a pain management specialist who ordered a significant amount of testing and treatment. R. 217, 220–221, 226–230, 245. As for the other relevant factors, neither the "supportability" nor "consistency" criteria enumerated in 20 C.F.R. § 404.1527(c)(3)–(4), as we have already noted, weigh strongly enough against Dr. Purdy's opinion to make the outcome of the six-factor inquiry a foregone conclusion.

Neither party has objected to the Magistrate's conclusion that the ALJ erred in its treatment of the opinion of Plaintiff's treating physician. We part ways with the Magistrate, however, in determining that, since Dr. Purdy's "medical source statement" is not *clearly* entitled to no weight, the ALJ's failure even to "minimally articulate" his reasoning requires remand. *See Clifford v. Apfel,* 227 F.3d 863, 869–871 (7th Cir. 2000) (approving remand where "ALJ did not adequately articulate his reasoning for discounting [treating physician's] opinion"). *See also Rugless v. Comm'r of Soc. Sec.*, 548 F. App'x 698, 699–700 (2d Cir. 2013); *Rife v. Comm'r of Soc. Sec.*, 485 F. App'x 56, 58 (6th Cir. 2012) (approving remand where ALJ's one-sentence explanation of his evaluation of treating physician testimony left court "unable to conduct a meaningful review").

## Conclusion

For the foregoing reasons, Plaintiff's first objection to the Magistrate's Report and Recommendation is SUSTAINED; the Commissioner's denial of DIB and SSI benefits is REVERSED, and the cause is REMANDED to the agency pursuant to 42 U.S.C. § 405(g) (Sentence 4) for reevaluation consistent with this opinion. Specifically, the ALJ should: (1) determine whether to accord Dr. Purdy's opinion controlling weight, explaining his or her decision in accordance with the "treating physician rule"; and (2) if the ALJ does not grant the opinion controlling weight, engage in the analysis set forth in 20 C.F.R. § 404.1527(c) as a guide

in determining what weight the opinion should be granted. We have not ruled on the validity of the ALJ's assessment of Ledbetter's credibility with regard to the limiting effect of his pain and symptoms on his functional capacity. On remand, the ALJ should engage in an analysis of Mr. Ledbetter's credibility based on a consideration of the entire case record, in a manner consistent with this ruling.

    IT IS SO ORDERED.

Date:   9/29/2014

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Frederick J. Daley, Jr.
DALEY DISABILITY LAW P.C.
fdaley@fdaleylaw.com

Meredith E. Marcus
DALEY DISABILITY LAW, PC
mmarcus@fdaleylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov